UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARCIA S. DIOGUARDI,

                              Plaintiff,

                                                      <u>DECISION AND ORDER</u>

                                                      04-CV-6237L

              v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

       This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security ("the Commissioner") that Darcia S. DioGuardi ("plaintiff")

is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to Disability

Insurance Benefits. The Commissioner moves for judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c), and seeks an affirmance of her final decision. (Dkt.# 3). Plaintiff also moves for

judgment on the pleadings but seeks reversal of the Commissioner's decision with an award of

benefits, or in the alternative, a remand for a new hearing. (Dkt. #5).

       For the reasons discussed below, the Commissioner's motion is denied, plaintiff's motion

is granted in part, and the case is reversed and remanded for further administrative proceedings,

pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## BACKGROUND

When plaintiff first applied for Social Security benefits, plaintiff had a 12th grade education with some additional vocational training. (T. 393).[1]  In December of 2001 she graduated from Genesee Community College with an associate's degree. (T. 453).  Her work history includes positions as a direct care aide, a teacher's aide, a home health aide, and a cashier. (T. 388).

Plaintiff was assaulted at work by a mentally retarded client on September 21, 1996. (T. 291, 552). The client grabbed plaintiff's hair from behind, and aggressively pulled her back over a seat. (T. 22, 554, 569). Plaintiff landed on her head and lost consciousness briefly. (T. 575, 630). Plaintiff first applied for Social Security benefits under Title II of the Act on March 17, 1997, alleging September 21, 1996 – the day she was attacked – as an onset date. (T. 244-247). She described her disabling injuries to be "muscle or soft tissue damage to neck [and] upper back," and "[t]hroat problem[,] had trouble swallowing – pain in front of throat and back of neck, even when just swallowing liquids." (T. 289, 297). Plaintiff's application was denied both initially and upon reconsideration. (T. 98-100, 103-105).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and on September 2, 1998 a hearing was held before ALJ Nancy Lee Gregg. (T. 999). Plaintiff appeared at the hearing with a representative from the law firm of Sciarrino & Sciarrino, LLP. (T. 1001).

In a partially favorable decision dated May 3, 1999, the ALJ found that plaintiff was disabled within the meaning of the Act for a period beginning September 21, 1996 and ending January 31, 1998. (T. 74-87). Plaintiff submitted a Request for Review of Hearing Decision to the Commissioner's Appeals Council on June 10, 1999. (T. 143-145). In that request, plaintiff raised

---

[1] "T.__" refers to the page of the administrative transcript filed by the Commissioner.

concerns of bias by the ALJ, and asked that on remand a new ALJ be assigned to further develop the record through vocational expert testimony. (T. 143-145).[2]

Plaintiff applied for Social Security benefits a second time on or about July 23, 1999, alleging an onset date of either September 21, 1996, or April 1, 1998. (T. 257, 387, 395). The onset date was later amended to February 1, 1998. (T. 1036-1037). Plaintiff's second application was denied initially and upon reconsideration. (T. 151-154, 158-160). Plaintiff requested another hearing before an ALJ on or about March 7, 2000.  (T. 164-166).

Before the hearing on the second application, the Appeals Council granted plaintiff's June 10, 1999 Request for Review of Hearing Decision. (T.180). In so doing, the Appeals Council vacated ALJ Gregg's May 3, 1999 decision, and remanded the case. (T. 180). Specifically, the Appeals Council found that ALJ Gregg erroneously "considered the fact that the claimant is attending college as evidence that she has attained medical improvement," a consideration precluded by 20 C.F.R. § 404.1586(g).  The Appeals Council did not order that a new ALJ be assigned upon remand, nor did it order that expert vocational testimony be taken. (T. 180-181).

---

[2] It appears that the claim of bias was based on the fact that, eight months after the first hearing, attorney Raymond P. Sciarrino wrote to ALJ Eric L. Glazer at the Office of Hearings and Appeals because Mr. Sciarrino was concerned by the length of time it was taking for ALJ Gregg to issue a decision. (T. 127-128). On April 13, 1999, ALJ Gregg responded to Mr. Sciarrino's letter to ALJ Glazer by writing, "You have not alienated me, but I wish you had been more thoughtful, courteous, and given more thought to this situation and written to me directly…. Nevertheless, I will address the contentions in your letter as objectively as possible." (T. 132). The ALJ then addressed Mr. Sciarrino's "contentions," and also accused plaintiff of inappropriately calling the ALJ on multiple occasions. (T. 132-136). Mr. Sciarrino responded to ALJ Gregg with a letter clarifying his concerns and stating that plaintiff had not, in fact, called the ALJ. (T. 138-139). The ALJ subsequently wrote to plaintiff that a "correct, appropriate, and fair decision in [her] case" would be issued, and  apologized if plaintiff was upset by any misunderstanding the ALJ may have had regarding calls made to the ALJ. (T. 141).

Plaintiff's two pending applications were consolidated on January 14, 2002, at a second hearing before ALJ Gregg. (T. 1032-1068). At the outset of the hearing, the ALJ asked plaintiff whether her earlier request for the ALJ to recuse herself still stood. (T. 1035)  After a brief discussion with plaintiff's representative,  plaintiff did not seek recusal. (T. 1036). The ALJ then made clear that because plaintiff's appeal resulted in the ALJ's original decision being vacated, the entire period of disability was being reconsidered, not only the period beginning February 1, 1998. (T. 1036-1038).[3] Testimony from a vocational expert was not taken at the second hearing.

On May 7, 2002, ALJ Gregg continued the hearing, at which testimony from a vocational expert was taken. (T. 1069-1093).  During this proceeding, the ALJ was questioned by plaintiff's representative about the basis for one of the hypothetical questions posed to the expert.  (T. 1086-1088).

On May 21, 2002, four years after plaintiff first appeared before ALJ Gregg for a hearing, the  ALJ requested that plaintiff be referred to a clinical psychologist for an examination to consider whether plaintiff had "a possible somatoform and/or factitous (sic) disorder, and rule out malingering, if possible." (T. 469). Plaintiff's counsel responded to that request by writing a second letter of complaint to the Office of Hearings and Appeals on July 31, 2002. (T. 223-225). The gravamen of the complaint was, "With the extreme backload of hearing level cases, Judge Gregg's style of processing cases seems extremely time consuming, costly, and unjust to the claimant's (sic)

---

[3] In plaintiff's Request for Review of Hearing Decision dated January 9, 2003, counsel, took issue with the ALJ's decision to review her former favorable decision without giving notice to plaintiff that she would do so. The Court notes that the plain language of 20 C.F.R. § 404.946 provides that the ALJ need not give notice *prior* to the hearing. 20 C.F.R. § 404.946 (" . . . if evidence presented before or during the hearing causes the administrative law judge to question a fully favorable determination, [she] will notify you and will consider it an issue at the hearing"); *see also McCarthy v. Apfel*, 221 F.3d 1119 (9th Cir.2001).

who are assigned to her and to those claimant's (sic) who are waiting a year or more after filing a hearing request to have a hearing scheduled." (T. 225). On August 6, 2002, the ALJ wrote to plaintiff and stated that she would withdraw her request for psychological examination and testing based upon the July 31st letter, because it included a statement that plaintiff was "not arguing that she [had] a severe mental impairment (only mild depression) . . . ." (T. 242).

On November 22, 2002, ALJ Gregg issued a second – less favorable – decision, this time finding that plaintiff was not disabled under the Act at any time during the entire period beginning September 21, 1996. (T. 17-69).  The ALJ determined that although plaintiff cannot perform her past relevant work, she can perform other work in the national economy, and, therefore, is not disabled. The ALJ's decision is an exhaustive, 53 page, single-spaced document that painstakingly reviews all of the evidence in the lengthy record. The ALJ's decision became the final decision of the Commissioner when, on March 26, 2004, the Appeals Council denied plaintiff's request for review. (T. 8-11). The instant action followed.

## DISCUSSION

### I. Standards for Determining Disability

A person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C.
§ 423(d)(2)(A).

To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds
through a five-step sequential evaluation.[4] *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986)
(citations omitted); *Tejada*, 167 F.3d at 774. Once a claimant has proven steps one through four, the
burden then shifts to the Commissioner to show that the claimant retains a residual functional
capacity ("RFC") to perform other substantial gainful work which exists in the national economy.
*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d
Cir.1986)).

## II. Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported
by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g);
*Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d

---

[4] The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial
gainful activity. Where the claimant is not, the Commissioner next considers whether the
claimant has a "severe impairment" that significantly limits her physical or mental ability to do
basic work activities. If the claimant suffers such an impairment, the third inquiry is whether,
based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt.
404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the
claimant disabled without considering vocational factors such as age, education, and work
experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment
is unable to perform substantial gainful activity. Assuming the claimant does not have a listed
impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the
residual functional capacity to perform her past work. Finally, if the claimant is unable to
perform her past work, the burden then shifts to the Commissioner to determine whether there is
other work which the claimant could perform. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

Cir.1991); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). Substantial evidence is defined as

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court carefully considers the

whole record, examining evidence from both sides "'because an analysis of the substantiality of the

evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (citing

*Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997) (quoting *Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir.1988)). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant

was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's

decision rests on adequate findings supported by evidence having rational probative force, [this

Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d

578, 586 (2d Cir.2002).

Such a deferential standard, however, is not applied to the Commissioner's conclusions of

law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. This

Court must independently determine if the Commissioner's decision applied the correct legal

standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal

standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review

the legal standards applied, and then, if the standards were correctly applied, consider the

substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal

v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998) ("Where there is a reasonable basis for doubt whether the

ALJ applied correct legal principles, application of the substantial evidence standard to uphold a

finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

have her disability determination made according to the correct legal principles." (quoting *Johnson*, 817 F.2d at 986)).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's decision.  Plaintiff, on the other hand, asserts that the ALJ's decision is not supported by substantial evidence and is based upon errors of law. I find that the ALJ in this case committed multiple errors of law, and that remand is required.

### III. The ALJ's Decision

Applying the five-step disability evaluation, ALJ Gregg first found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, September 21, 1996. (T. 22). At step two, the ALJ found that plaintiff had impairments that were "severe" within the meaning of the Act. (T. 67). More specifically, the ALJ found that plaintiff had "a cervical trapezius interscapular muscle strain," and as of December 26, 2001, "small uncovertebral joint spurs at the C3-C4 level, without any impingement; a small focal central disc protrusion at C4-5, with uncovertebral joint spurs, without any impingement; a central disc bulge at C5-C6 with small uncovertebral joint spurs bilaterally, without any impingement; some degree of degenerative disc disease of the lumbar and lumbosacral spine, with most severe changes seen at L3-4 and L5-S1; small endplate Schmorl's nodes along the interior endplate of T12; and a focal right paracentral disc protrusion at L5-S1 that was confined to the anterior epidural fat abutting, but not impinging, the right S1 nerve root." (T. 67). At step two the ALJ also found that plaintiff had mild depression resulting "in mild restriction of her activities of daily living . . . ." (T. 67). At step three, the ALJ concluded that plaintiff's impairments did not meet or equal any of the listed impairments set forth at 20 C.F.R. Part 404,

Subpart P, Appendix 1. (T. 67). At step four, the ALJ determined that plaintiff did not retain the residual functional capacity ("RFC") to perform her past relevant work, which the ALJ identified as skilled, medium work. (T. 68). The ALJ's RFC assessment is as follows:

> [Plaintiff] retained the residual functional capacity to: lift, carry, push and/or pull up to 20 pounds occasionally and ten pounds frequently (although the [plaintiff] cannot use her upper extremities repetitively for such activities, she is physically capable of using them occasionally for up to 20 pounds and more frequently for ten pounds or less); sit for about six hours in an eight-hour workday, with normal breaks; stand and/or walk for about six hours in an eight-hour work day, with normal breaks; and perform a combination of sitting, standing, and walking to complete an eight-hour workday on a regular and continuing basis; occasionally reach, but not reach above shoulder level; frequently balance; occasionally climb stairs or ramps, but never climb ropes, ladders or scaffolds; occasionally stoop, kneel and crawl; and at least occasionally handle, finger and feel. However, she should avoid operating machinery or heavy equipment, temperature extremes (cold), vibrations, and should not move her neck in a repetitive, rapid manner. As of about March 2001, the [plaintiff]'s ability to lift, carry, push, and/or pull was between ten and 20 pounds occasionally and ten pounds frequently, but not repetitively; her other abilities and limitations remained the same. [Plaintiff] does not have any significant mental limitations.

At step five the ALJ used the medical-vocational grids as "a framework" for her decision; she considered plaintiff's age, education, past relevant work experience, her RFC, and testimony from a vocational expert and concluded that plaintiff could perform jobs found in significant numbers in the national economy.  These included a registration clerk, usher/lobby attendant, counter clerk (photofinishing), survey worker, and case aide. (T. 69). She thus concluded that plaintiff was not "disabled" under the meaning of the Act on any date through August 5, 2002, the date the record was closed. (T. 69).

## IV. ALJ Decision: Reversal Required

The Commissioner's decision that plaintiff is not disabled must be reversed because the ALJ failed to apply the proper legal standards at the fourth and fifth steps of her analysis. In this case, the ALJ failed to properly identify the weight given to the opinion of a treating physician, she failed to resolve discrepancies between her RFC and the medical source statements that she purportedly assigned "very great weight," and she failed to establish that plaintiff can perform work available in significant numbers in the national economy.

### A. The ALJ failed to explain the weight, if any, that was given to the opinion of a treating source.

The ALJ committed legal error when she failed to assign any weight, or explain the weight she assigned, to the opinion of orthopedic surgeon Gerald A. Coniglio, M.D. "Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(f)(2)(ii). In this case, ALJ Gregg did not assign controlling weight to the opinion of plaintiff's original treating physician, Jeffrey Hanson, M.D., and plaintiff does not take issue with that decision.[5] (T. 54). In light of that determination, however, Dr. Coniglio's opinion

---

[5] The record contains evidence that Dr. Hanson served as plaintiff's primary care physician through at least March 23, 2001, and that he was replaced by Jane L. Kjoller, M.D., on or about April 4, 2001. (T. 890, 992-993). "Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, *e.g.*, [*Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir.1993)], the opinion of the treating physician is not afforded
(continued...)

takes on particular significance.

Dr. Coniglio examined and/or treated plaintiff on at least six occasions during the period beginning December 11, 2000 and ending March 29, 2001. (T. 803, 833, 836, 837, 840, 847, 848, 851). The record includes pages from six of Dr. Coniglio's examination reports, (T. 803, 833, 836, 840, 848, 851), two complete operative reports, (T. 837, 847), his statement assessing the plaintiff's limitations and the medical findings supporting those assessments. (T. 805-806). He also submitted a letter that further explains his assessment of plaintiff's limitations.[6] (T. 838).

_____

[5](...continued)
controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino*, 312 F.3d at 588 (treating physician's opinion is not controlling when contradicted 'by other substantial evidence in the record'); 20 C.F.R. § 404.1527(d)(2)." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004). In the instant case, the medical opinions submitted by Dr. Hanson to the ALJ were internally inconsistent. (T. 842, 918). Moreover, the record contains a note written by Dr. Hanson to VESID offering to change plaintiff's weight lifting restriction if it would help plaintiff get assistance from VESID. (T. 940). Thus, Dr. Hanson's opinion as the treating physician is not entitled to controlling weight.

[6] "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(d)(3). Here, Dr. Coniglio stated that plaintiff's back pain and limitations were attributed to her "injured/inflamed/deranged lumber (sic) disc." He explained that:

> Such a disc produces pain maximally when one sits, and when one lifts. This is because the disc is maximally bio-mechanically loaded when one sits or when one lifts. It matters not if one lifts a weight. Therefore, lifting, or bending forward, is a particular problem, even without the lifting of weights. Anyone with an injured disc who rides in a car can tell you this, and any house wife can also tell you this as the back pain is acutely exacerbated by making beds, sweeping, etc. Therefore such a patient, without demonstrated and/or documented evidence *otherwise*, should not be made to lift at all, or sit for any period longer than approximately 15-30 minutes. They should not be made to bend at all. They should be allowed to move about at will, because walking actually relieves the mechanical stress on the disc, and

(continued...)

The ALJ was well-aware of Dr. Coniglio's opinions, as her decision referenced his findings no less than ten times. (T. 22, 24, 33, 36, 40, 41, 46, 47, 55, 60). In fact, the ALJ refers to Dr. Coniglio as a "treating physician," (T. 60). As such, his medical opinions were entitled to controlling weight under the laws of this Circuit and the Commissioner's own rules. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003) (the opinion of a treating physician is given controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence); *see also* 20 C.F.R. § 404.1527(d)(2). Despite the repeated references to Dr. Coniglio's opinions in the ALJ's decision, she adopted no part of his medical source statement for use in her RFC assessment.

The ALJ was required to explain what weight, if any, she assigned to Dr. Coniglio's opinions. "By not doing so, the ALJ deviated from one of the legal standards she was required to apply to [her] evaluation of the evidence and, at the same time, failed to set forth a crucial issue 'with sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence.'" *Torres v. Barnhart*, No. CV-01-6051, 2005 U.S. Dist. LEXIS 937, at *19 (E.D.N.Y. Jan. 24, 2005) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984)). Failure to explain the weight assigned to Dr. Coniglio's opinions was not harmless.

---

[6](...continued)
    movement relieves the pain and stiffness due to inflammation.

    The objective findings that [plaintiff] has are tenderness in the lower back, pain and limitation of movement with forward flexion and backward extension, weakness of dorsiflexors and plantarflexors of the feet, positive straight leg raising on the right and left, and sensory changes in the lower extremeties. She also has a suggestion of a positive MRI at L5-S1. The only way this can be confirmed (or negated) is by discography. (T. 838).

Dr. Coniglio's medical source statement identified significant limitations in plaintiff's ability to lift or carry items weighing even less than ten pounds, an opinion consistent with that of Charles R. Reina, M.D. (T. 805, 924). Dr. Coniglio's statement also identified significant limitations in plaintiff's ability to stand or walk for any longer than one hour during an eight-hour workday. (T. 805). His statement further assessed plaintiff's ability to sit at less than one hour without interruption. (T. 805). Those restrictions could substantially limit plaintiff's ability to perform a full range of sedentary work, and may prevent her from performing any work in the national economy.[7] *See* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling 96-9p (1996).

Plaintiff was entitled to an express recognition from the Commissioner of the existence of Dr. Conigli's favorable medical source statement and, if the ALJ declined to accept it, the reasons for not doing so. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). That is particularly true here because Dr. Coniglio's medical source statement conflicts with the ALJ's RFC assessment.

**B. The ALJ failed to reconcile discrepancies between her RFC assessment and medical source statements.**

The ALJ committed legal error when she created, without explanation, a RFC assessment that conflicts with substantial portions of the medical source statements from not only Dr. Coniglio, but also from Dr. Reina and neurologist Seth Zeidman, M.D. The ALJ assigned the medical source statements of Drs. Reina and Zeidman "very great weight," (T. 37, 50), but selectively adopted only the portions of each statement that were least supportive of plaintiff's application for benefits.

---

[7] On May 7, 2002, a vocational expert testified that a weight limitation of eight pounds would restrict plaintiff to less than sedentary work, and that would result in her inability to "perform any work." (T. 1083).

Under the Commissioner's own rules, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Ruling 96-8p (1996). "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y.1995) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983)). The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits. *Torres*, 2005 U.S. Dist. LEXIS 937, at *19-20 (citing *Gecevic*, 728 F.Supp. at 285-286). The ALJ was further required to explain why Dr. Coniglio's opinion was not adopted, since his medical opinion conflicts with the ALJ's RFC assessment.

Dr. Reina is a one-time examining physician who saw plaintiff on July 20, 1999. (T. 924). ALJ Gregg assigned Dr. Reina's opinion "very great weight" based in part upon his "thorough and objective review of the [plaintiff]'s complaints . . . as well as his findings upon examination." (T. 50). Dr. Reina's report states that the basis for his opinion is grounded more in symptoms than it is in objective findings, but nonetheless concludes that plaintiff should "avoid lifting with the right upper extremity anything greater than 5-10 lbs. I would avoid reaching above the shoulder level or carrying any object weighing greater than 10 lbs. passively at her side below her waist." (T. 925). The ALJ adopted only that portion of Dr. Reina's statement that restricts plaintiff from reaching above shoulder level. (T. 40, 67-69). She disregarded the lifting/carrying restrictions, and she did so without explanation. (T. 40, 67-69). That was error.

Dr. Zeidman examined plaintiff on at least two occasions, once in July 2001, and again in January 2002. (T. 884, 954). He completed a medical source statement on September 14, 2001,

before he saw plaintiff a second time. (T. 877-880). ALJ Gregg assigned Dr. Zeidman's opinion "very great weight." (T. 37). Dr. Zeidman stated that plaintiff could lift or carry up to 20 pounds occasionally, and 10 pounds frequently. (T. 877). He further found that plaintiff could stand and/or walk "at least 2 hours in an 8-hour workday," and that she could sit "less than about 6 hours in an 8-hour workday." Here, again, the ALJ only adopted the less favorable portions of the doctor's statement when constructing her RFC assessment. In this instance, the ALJ adopted only Dr. Zeidman's weight restrictions, which are inconsistent with the restrictions set by Drs. Reina and Coniglio.[8] The ALJ disregarded Dr. Zeidman's statements pertaining to plaintiff's ability to stand, walk, and sit. Instead, she adopted less restrictive opinions from two review physicians, Janis Dale, M.D. and Charles Oh, M.D. In doing so, the ALJ created another discrepancy between her RFC assessment and the medical source statement of a physician whose opinion was given "very great weight." (T. 37). The ALJ committed legal error when she bypassed the Commissioner's own rules regarding the evaluation of opinion evidence. 20 C.F.R. § 404.1527(d)(1) states, "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." Once again, the ALJ erroneously offered no explanation for her choices.

With no explanation provided, it is not possible for the Court to know why, when faced with differing but equally-weighted opinions from two physicians, the ALJ chose to disregard the evidence that was more favorable to plaintiff's claim. Her failure to reconcile the RFC assessment

---

[8] Dr. Reina stated that plaintiff should "avoid lifting with the right upper extremity anything greater than 5-10 lbs. I would avoid . . . carrying any object weighing greater than 10 lbs. passively at her side below her waist." (T. 925). Dr. Coniglio stated that plaintiff could lift 10 pounds at one time, five pounds occasionally, and should not lift any amount of weight "frequently," meaning for two-thirds of an 8-hour workday. (T. 805).

with medical source statements was error, and based upon the testimony given by the vocational expert, the failure was not harmless.

**C. The Commissioner failed to meet her burden of proof that plaintiff can perform work available in the national economy.**

I find  that the ALJ's hypothetical questions to the vocational expert disregarded the functional limitations found by a physician whose opinion was given "very great weight." Thus, her decision must be reversed.

The ALJ erroneously failed to address a number of specific functional limitations – as stated by physicians whose opinions were given great weight – when she posed hypotheticals to the vocational expert. For example, the ALJ's findings of fact include mild depression resulting in mild difficulties maintaining concentration, persistence or pace. (T. 67). The ALJ spends a great deal of time in her decision justifying the additional finding that plaintiff's mental impairments are not "severe" as defined under the Act. Whether or not plaintiff's mental impairments are "severe" or not, however, does not decide the question of whether the impairments are considered when assessing a person's RFC. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." Soc. Sec. Ruling 96-8p (1996). Other ignored limitations, such as the weight restrictions stated by Dr. Reina, are discussed *supra*.

"It is bedrock Social Security law that the responses of a vocational expert are relevant only to the extent offered in response to hypotheticals that correspond to medical evidence of record."

- 16 -

*Hall v. Barnhart*, No. 03-299-P-C, 2004 U.S. Dist. LEXIS 16928, at*6 (D. Me. Aug. 25, 2004) (citing *Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir.1982)). "In order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities. To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." *Arocho*, 670 F.2d at 375.

Portions of the vocational expert's testimony that the ALJ adopted in her decision do not provide substantial evidence that plaintiff can perform work in the national economy. This is because the ALJ did not address substantial functional impairments identified by physicians whose opinions were given great weight when she posed hypothetical questions to the vocational expert. *Horbock v. Barnhart*, 210 F. Supp. 2d 125, 134 (D. Conn.2002) ("in order for the testimony of a vocational expert to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental supported by the record.") (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir.1995)). Having failed to produce reliable evidence, the Commissioner failed to meet her burden at step five of the sequential analysis. *Rosa*, 168 F.3d at 77. The only question left is whether the Court should order reversal and remand for the immediate calculation of benefits, or for further administrative proceedings.

### V. Reversal and Remand for Further Administrative Proceedings

Under 42 U.S.C. § 405(g), the Court has the authority to affirm, reverse, or modify a final decision of the Commissioner, with or without remand. *See Butts v. Barnhart*, 388 F.3d 377, 385

- 17 -

(2d Cir.2004). Although the ALJ erred in each of her two decisions leading to the final decision of the Commissioner, and despite the fact that plaintiff's application languished before the Commissioner for seven years before reaching this Court, this is not a case "[w]here the existing record contains persuasive proof of disability and a remand for further proceedings would serve no purpose." *Marinez v. Comm'r*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003) (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)).

Here, the extent of plaintiff's limitations are not obvious because the record contains numerous conflicting medical source statements. Moreover, even if the Court could discern plaintiff's RFC from the record, this case would still have to be remanded for further administrative proceedings to determine whether plaintiff could perform jobs available in the national economy based upon the new RFC. "'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.'" *Rosa*, 168 F.3d at 82-83 (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)). This is a case where a remand to the Commissioner for factual determinations and proper application of the correct legal standards is required. *See Pratts*, 94 F.3d at 39.

On remand, the Commissioner needs to first make factual findings regarding how much weight to assign Dr. Coniglio's opinion, then reassess plaintiff's RFC with citations to the specific medical source statements upon which each of the RFC findings are based. If the Commissioner chooses to incorporate parts of medical source statements into the RFC that are unfavorable to plaintiff – particularly when the inclusion of other statements that have been assigned equal or

greater weight would be favorable to plaintiff – the ALJ must explain her decision.[9] *See Torres*,

2005 U.S. Dist. LEXIS 937, at *19-20; *see also* Soc. Sec. Ruling 96-8p (1996). Although ALJ Gregg

took  great effort to detail the evidence in the record and explain what weight she gave most

opinions of record, her RFC assessment is inconsistent with her own explanations. On remand, the

discrepancies discussed in the body of this decision should be reconciled.

The Commissioner also needs to properly analyze step five in light of the RFC findings made

upon remand. Any vocational expert testimony should be based on hypothetical questions that

accurately state plaintiff's limitations and RFC. Although a remand here will regrettably cause more

delay, the determinations needed at steps four and five cannot be made by this Court, given its

limited jurisdiction under 42 U.S.C. § 405(g).

Finally, the Appeals Council should consider carefully whether to assign this case to a

different ALJ on remand, for several reasons.

First, there is evidence in the record of hostility between ALJ Gregg and plaintiff's

representative.  In several instances during the three different hearings, and in an exchange of letters,

there is clear animosity between the ALJ and the representative. (T. 223-25; 242; 469;1085-1088;

*see also* n.2, *supra*). *Ocasio v. Barnhart*, No. 00-6277, 2002 WL 485691, at *10 (E.D.N.Y. Mar. 28,

2002) (animosity between plaintiff's attorney and original ALJ warranted remand to a new ALJ).

Second, ALJ Gregg has failed twice to apply the correct legal standards in this case.

*Kolodnay v. Schweiker*, 680 F.2d 878, 879-80 (2d Cir.1982) (upholding remand to a new ALJ after

---

[9] On remand, the Commissioner must assign weight to the medical source statements of
every physician in the record without ignoring either the statements that would be favorable to
plaintiff's application or unfavorable statements that might be incorporated into the RFC. 20
C.F.R. § 404.1527(f)(2)(ii).

the first ALJ did not consider the entire medical record); *Ortiz v. Chater*, No. 95 CV 3126, 1997 WL 50217, at *3, n.1 (E.D.N.Y. Jan.30, 1997) ("rather than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial.").

Third, throughout her decision, ALJ Gregg makes it clear that she finds plaintiff to be incredible. She also has expressed concerns that plaintiff may suffer from a mental impairment that causes her to lie about or falsely believe that she has pain and other physical impairments (*see, e.g.,* T. 469). This suggests that the ALJ may have formed opinions about the claimant that could possibly prevent an objective review of the evidence and a fair rehearing. *See Sutherland v. Barnhart*, 322 F.Supp.2d 282, 292 (E.D.N.Y.2004) (noting that the impartiality of an ALJ is "integral" to the disability review process and that "remand to new ALJ will be necessary in those situations which compromise that integrity.").

In light of the history of this case, I have concerns about whether the integrity of the proceedings would be compromised by remanding this case to ALJ Gregg for a third time. Although in certain circumstances the Court may *order* the Commissioner to assign a different ALJ on remand, *see Kolodnay*, 680 F.2d at 879-80; *Sutherland*, 322 F.Supp.2d at 292-93, plaintiff has not asked the Court for such relief. The Commissioner, however, should consider in her discretion whether the case warrants a "fresh look" by a new ALJ. *See Nunez v. Barnhart*, No. 01 CV 5714, 2002 WL 31010291 (E.D.N.Y. Sept. 9, 2002) (leaving the decision to assign a new ALJ on remand "to the sound discretion of the Commissioner."); *Hartnett v. Apfel*, 21 F.Supp.2d 217, 222 (E.D.N.Y.1998) (whether to assign a new ALJ on remand is generally a determination for the Commissioner); *see also* 20 C.F.R. § 404.940.

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings (Dkt.# 3) is denied.  Plaintiff's

motion for judgment on the pleadings (Dkt.# 5) is granted, in part. The case is remanded pursuant

to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this

Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
       August 11, 2006.